JS 44   (Rev. 07/16)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
JERMAINE JENKINS   AND   JEROME JOHNSON
444 Main Street          644 W. 7th Street
Tullytown, PA 19007    Plainfield, NJ 07060

**DEFENDANTS**
NEW JERSEY TRANSIT RAIL OPERATIONS, INC.,
One Penn Plaza East
Newark, New Jersey 07105-2216

**(b)** County of Residence of First Listed Plaintiff    Bucks County, PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Essex County, NJ
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
ROBERT E. MYERS, ESQUIRE
COFFEY KAYE MYERS & OLLEY
TWO BALA PLAZA, SUITE 718
BALA CYNWYD, PA 19004

Attorneys *(If Known)*
Robert E. Myers, Esquire
Lawrence A. Katz, Esquire

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☒ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 840 Trademark | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation - Transfer
- ☐ 8  Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Federal Rail Safety Act
Brief description of cause:
Retaliation /Whistleblower against Railroad employees

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.
DEMAND $  $175,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes   ☐ No

**VIII. RELATED CASE(S) IF ANY**
*(See instructions):*
JUDGE  Brody
DOCKET NUMBER  17-1143

DATE  5/17/17
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #                AMOUNT                APPLYING IFP                JUDGE                MAG. JUDGE

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| JERMAINE JENKINS AND JEROME JOHNSON | : | CIVIL ACTION |
| | : | |
| v. | : | |
| NEW JERSEY TRANSIT RAIL OPERATIONS, | : | NO. |
| INC., | : | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a)  Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    (  )

(b)  Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security benefits.                                        (  )

(c)  Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. (  )

(d)   Asbestos – Cases involving claims for personal injury or property damage from exposure
 to asbestos                                                                                                                         (  )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)                            (  )

(f )  Standard Management – Cases that do not fall into any one of the other tracks.       (**X**)

| | | |
|---|---|---|
| 5/17/17 | Robert E Myers | |
| Date | ROBERT E. MYERS | Attorney for Plaintiff |

| | | |
|---|---|---|
| 610-668-9800 | 610-667-3352 | RMYERS@CKMO.COM |
| **Telephone** | **FAX Number** | **E-Mail Address** |

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 444 Main Street, Tullytown, PA 19007 and 644 W. 7th Street, Plainfield, NJ 07060 _____

Address of Defendant: One Penn Plaza East, Newark, NJ 07105-2216 _____

Place of Accident, Incident or Transaction: Morrisville, PA _____
(Use Reverse Side For Additional Space)

At the Marine Yard _____

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))       YesO   NoⓍ

Does this case involve multidistrict litigation possibilities?       Yeso   NoO

RELATED CASE, IF ANY:

Case Number: 17-1143 _____   Judge Brody _____   Date Terminated: 5/9/2017 _____

Civil cases are deemed related when yes is answered to any of the following questions

Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
O       YES   X   NO

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
YES X       NO

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
YesO   NoⓍ

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
YES       NO X

CIVIL. (Place X' in ONE CATEGORY ONLY)

A. Federal Question Cases:

1. o Indemnity Contract, Marine Contract, and All Other Contracts
2. o FELA
3. o Jones Act-Personal Injury
4. o Antitrust
5. o Patent
6. o Labor-Management Relations
7. o Civil Rights
8. o Habeas Corpus
9. o Securities Act(s) Cases
10. o Social Security Review Cases
11. o All other Federal Question Cases
   (Please specify) Federal Rail Safety Act _____

B. Diversity Jurisdiction Cases:

1. o Insurance Contract and Other Contracts
2. o Airplane Personal Injury
3. o Assault, Defamation
4. o Marine Personal Injury
5. o Motor Vehicle Personal Injury
6. o Other Personal Injury (Please specify)
7. o Products Liability
8. o Products Liability — Asbestos
9. o All other Diversity Cases
   (Please specify) _____

ARBITRATION CERTIFICATION
(Check Appropriate Category)

I, Robert E. Myers, Esquire _____, counsel of record do hereby certify:

   x Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

   x Relief other than monetary damages is sought.

DATE: 5/7/17 _____   _Robert E. Myers_ _____   23762 _____
                          Robert E. Myers, Esquire Attorney-at-Law       Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 5/17/17 _____   _Robert E. Myers_ _____   23762 _____
                          Robert E. Myers, Equire Attorney-at-Law       Attorney I.D.#

CIV. 609 (5/2012)

COFFEY KAYE MYERS & OLLEY
BY:    ROBERT E. MYERS, ESQUIRE
       ATTORNEY ID NO.: 23762
       LAWRENCE A. KATZ, ESQUIRE
       ATTORNEY ID NO.: 19349
Suite 718, Two Bala Plaza
Bala Cynwyd, PA  19004
(610) 668-9800
(610) 667-3352 (Fax)                                    **Attorneys For:  Plaintiff**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JERMAINE JENKINS, | : | CIVIL ACTION |
|           **Plaintiff** | : | |
| **And** | : | |
| JEROME JOHNSON, | : | |
|           **Plaintiff** | : | |
|       **vs.** | : | |
| NJ TRANSIT RAIL OPERATIONS, INC., | : | **JURY TRIAL DEMANDED** |
|           **Defendant** | : | NO. |
| | : | |

## COMPLAINT

## COUNT I – JERMAINE JENKINS

1.    The plaintiff, Jermaine Jenkins, brings this action against the defendant, New Jersey

Transit Rail Operations, Inc. for violations of the *Federal Rail Safety Act*, 49 U.S.C. §20109.

## JURISDICTION

2.    This court has subject matter jurisdiction in this case pursuant to the *Federal Railroad

Safety Act*, 49 U.S.C. §20109(d) (3) (FRSA).

## PARTIES

3.      The plaintiff, Jermaine Jenkins, is a citizen and resident of the Commonwealth of Pennsylvania, residing therein at 444 Main Street, Tullytown, Pennsylvania 19007.

4.      The defendant, New Jersey Transit Rail Operations, Inc. (NJTRO), is a corporation duly organized and existing under and by virtue of the laws of the state of New Jersey and does business in the Eastern District of Pennsylvania.

5.      At all times material hereto, the defendant operated trains in, had employees working in, and did business in the Eastern District of Pennsylvania.

## FACTS

6.      During all times mentioned herein, the defendant railroad carrier engaged in interstate commerce by providing railroad transportation between several of the states of the United States, including but not limited to, the Commonwealth of Pennsylvania, the State of New Jersey, and the State of New York.

7.      At the time of the defendant's FRSA violations, the plaintiff was employed by the defendant railroad as a conductor/brakeman, and qualified as an employee within the meaning of 49 U.S.C. §20109.

8.      All of the averments set forth in the foregoing paragraphs are incorporated in the following Causes of Action as though set forth therein at length.

## FRSA CAUSE OF ACTION – I

9.      Plaintiff has been employed by NJT since January 30, 1995.

10.     Plaintiff is a qualified conductor/brakeman, works at many locations, but primarily at NJT's Morrisville, Pennsylvania Yard.

2

11.     Mr. Joseph Burkert is NJT's Yardmaster at the Morrisville Yard.

12.     During plaintiff's NJT employment, he was under the supervision of Mr. Burkert.

13.     During the course of his railroad employment, and particularly while employed at the Morrisville Yard, Mr. Burkert instructed Mr. Jenkins and his co-workers to engage in train movements and other employment activities, that violated regulations of the Federal Railroad Administration, NORAC Rules and NJT's own policies, rules and procedures.

14.     Amongst the illegal movements that Mr. Burkert ordered the plaintiff and his co-workers to perform, was to permit equipment to foul a track.

15.     According to his rights under the Federal Rail Safety Act and other federal statutes and regulations, Mr. Jenkins refused to perform the illegal movements and filed one or more Good Faith Challenges.

16.     After plaintiff made these Good Faith Challenges, NJT ordered a meeting between Mr. Jenkins and the other employees, as well as supervisors, Mr. Burkert, Assistant Superintendent Patrick Martin, Superintendent Hicks and other NJT Officers and Supervisors.

17.     At the aforementioned meeting, Mr. Burkert and the other NJT Officers and Supervisors informed the employees that the employees' insistence, that all FRA, NORAC and NJT regulations and rules be followed was disruptive to the railroad, and was making it difficult to have the work performed at a level of productivity that "the bosses desired and required." The employees were further instructed that they were to no longer further impede railroad operations and productivity by raising the various regulations, rules, policies and procedures.

18.     Thereafter, plaintiff and other employees who were present at the meeting requested that the General Chairman of their Union file a grievance against Mr. Burkert, due to his frequent orders to violate FRA, NORAC and NJT rules and regulations.

19.    The request that grievance be filed was in violation of the instructions given to the employees by Mr. Burkert, Mr. Martin, Mr.Hicks and the other NJT Officers and Supervisors, that they were to no longer insist that rules and regulations be followed, and that they were to no longer impede railroad operations and productivity by raising FRA, NORAC and NJT rules and regulations.

20.    A copy of the request for a grievance was provided to Mr. Joseph Burkert, Mr. Patrick Martin, Mr. Robert Hicks, and numerous other NJT Officers, Managers and Supervisors.

21.    On or about April 30, 2015, plaintiff was informed that he was being charged with insubordination in the violation of radio rules, and that violation occurred on April 23, 2015, just days after the meeting between the NJT Morrisville Yard employees and Supervisors.

22.    The plaintiff was charged with insubordination and violation of radio rules, even though no such violations ever occurred.  Furthermore, even had the alleged conduct actually occurred, these charges had been brought against the plaintiff to retaliate against his making a Good Faith Challenge to the order to foul the tracks, participating in a grievance to alert superiors to Mr. Burkert's illegal actions, and for his refusal to acquiesce to Messrs. Hicks' and Martin's orders that he and his co-workers stop insisting on compliance with FRA, NORAC and NJT rules and regulations.

23.    The aforementioned charges brought against the plaintiff were not only intended to discriminate against him, but to intimidate him into obeying illegal orders, not making further Good Faith Challenges, and not reporting these illegal orders to NJT Officers and Supervisors.

24.    The conduct of NJT's Officers, Managers and Supervisors is beyond all levels of common decency; are outrageous; was intended to willfully cause extreme distress to the plaintiff, and constitute outright, willful and grossly careless actions, within which there is a wonton disregard and reckless indifference for the rights and welfare of the plaintiff.

4

25.     The defendant railroad had knowledge of all of the protected activities referenced above.

26.     The defendant railroad took adverse or unfavorable actions, and engaged in a pattern of retaliatory behavior, against the plaintiff in whole or in part due to his protected activities when it engaged in the aforementioned retaliation and discipline.

27.     In so doing the defendant railroad acted with reckless disregard for the law and with complete indifference to the plaintiff's rights under the FRSA.

28.     On October 8, 2015, the plaintiff filed a FRSA complaint with the Secretary of Labor's Region III OSHA Whistleblower Office.  This was filed within 180 days from the date the plaintiff became aware of the defendant railroad's intent to take adverse or unfavorable personnel action against him.

29.     The Region III OSHA Whistleblower Office commenced its investigation, and the plaintiff fully cooperated with OSHA's investigation.  However, OSHA did not issue a final decision within 210 days after the filing of the FRSA complaint.  The delay was not due to any bad faith on the part of the plaintiff.

30.     On June 15, 2016, Plaintiff filed a *Notice of Intent to File Original Action In United States District Court* with the OSHA Region III Whistleblower Office.

31.     More than 15 days have elapsed since Plaintiff filed his Notice of Intent.

32.     Plaintiff has exhausted all administrative remedies as required by statute and/or common law.

33.     Pursuant to 49 U.S.C. §20109(d)(3) of the FRSA, the plaintiff has a statutory right to bring an original action in the United States District Court for a jury trial regarding the railroad's violation of the FRSA.

34.     Pursuant to the FRSA, 49 U.S.C.§20109(d)(3), the plaintiff is now bringing this original action in law and equity for de novo review by the United States District Court for the Eastern District of Pennsylvania, which court has jurisdiction over this FRSA action without regard to the amount in controversy.

**WHEREFORE,** in order to encourage employees to freely report all injuries without fear of any retaliation, and further to encourage all employees to freely report unsafe conditions and violations of federal statutes and regulations, thereby ensuring the Federal Railroad Administration has the necessary information to develop and administer an effective rail safety regulatory program that promotes safety in every area in our nation's railroad operations, the plaintiff demands a judgment under the FRSA for all relief necessary to make him whole, including but not limited to:

   a.   expungement of all references to the disciplinary actions set forth above;

   b.   compensatory damages for mental anguish and emotional distress due to the defendant's conduct;

   c.   compensatory damages for economic losses due to the defendants' conduct;

   d.   the statutory maximum of punitive damages;

   e.   special damages for all litigation costs including expert witness' fees and attorneys' fee.

### FRSA CAUSE OF ACTION – II

35.     Plaintiff has been employed by NJT since January 30, 1995.

36.     Plaintiff is a qualified conductor/brakeman who primarily works at NJTRO's Morrisville, Pennsylvania Yard.

37.     On or about October 21, 2015, the plaintiff engaged in a train movement during which time a derailment occurred allegedly as a result of his failure to properly throw a switch.

6

38. On or about November 5, 2015, plaintiff was disciplined. Specifically, plaintiff was suspended for thirty (30) days, and there was a thirty (30) revocation of his Conductor Certification. Although plaintiff consented to this punishment, and waived his rights to a hearing by NJT officials, he only did so because he knew that he had become a target for NJT officers, management and supervisors, and that a formal hearing could result in his termination.

39. The thirty (30) days discipline and thirty (30) days revocation of his Conductor's Certification was significantly more severe punishment than other employees who committed similar infractions received.

40. Plaintiff received disproportionately severe punishment compared to other employees committing similar offenses. In fact, plaintiff's punishment was twice as severe as the punishment of his co-worker, who was also involved in the derailment.

41. At the time that plaintiff was disciplined on November 5, 2015, as a result of the October 21, 2015 incident, NJT, its officers, managers and supervisors were not only aware of the protected activities described more fully in Count I, but were also aware that on October 8, 2015, plaintiff filed a complaint with OSHA for NJT's violation of the FRSA's whistleblower/retaliation provisions.

42. The defendant railroad had knowledge of all of the protected activities referenced above.

43. The defendant railroad took adverse or unfavorable actions, and engaged in a pattern of retaliatory behavior, against the plaintiff in whole or in part due to his protected activities when it engaged in the aforementioned retaliation and discipline.

44. In so doing, the defendant railroad acted with reckless disregard for the law and with complete indifference to the plaintiff's rights under the FRSA.

45.     On January 28, 2016, the plaintiff filed a FRSA complaint with the Secretary of Labor's Region III OSHA Whistleblower Office.  This was filed within 180 days from the date the plaintiff became aware of the defendant railroad's intent to take adverse or unfavorable personnel action against him.

46.     The Region III OSHA Whistleblower Office commenced its investigation, and the plaintiff fully cooperated with OSHA's investigation.  However, OSHA did not issue a final decision within 210 days after the filing of the FRSA complaint.  The delay was not due to any bad faith on the part of the plaintiff.

47.     On June 15, 2016, Plaintiff filed a *Notice of Intent to File Original Action In United States District Court* with the OSHA Region III Whistleblower Office.

48.     More than 15 days have elapsed since Plaintiff filed his Notice of Intent.

49.     Plaintiff has exhausted all administrative remedies as required by statute and/or common law.

50.     Pursuant to 49 U.S.C. §20109(d)(3) of the FRSA, the plaintiff has a statutory right to bring an original action in the United States District Court for a jury trial regarding the railroad's violation of the FRSA.

51.     Pursuant to the FRSA, 49 U.S.C.§20109(d)(3), the plaintiff is now bringing this original action in law and equity for de novo review by the United States District Court for the Eastern District of Pennsylvania, which court has jurisdiction over this FRSA action without regard to the amount in controversy.

**WHEREFORE,** in order to encourage employees to freely report all injuries without fear of any retaliation, and further to encourage all employees to freely report unsafe conditions and violations of federal statutes and regulations, thereby ensuring the Federal Railroad Administration

8

has the necessary information to develop and administer an effective rail safety regulatory program that promotes safety in every area in our nation's railroad operations, the plaintiff demands a judgment under the FRSA for all relief necessary to make him whole, including but not limited to:

      f.   expungement of all references to the disciplinary actions set forth above;

      g.   compensatory damages for mental anguish and emotional distress due to the defendant's conduct;

      h.   compensatory damages for economic losses due to the defendants' conduct;

      i.   the statutory maximum of punitive damages;

      j.   special damages for all litigation costs including expert witness' fees and attorneys' fee.

## COUNT II – JEROME JOHNSON

52.    The plaintiff, Jerome C. Johnson, brings this action against the defendant, New Jersey Transit Rail Operations, Inc. for violations of the *Federal Rail Safety Act*, 49 U.S.C. §20109.

## JURISDICTION

53.    This court has subject matter jurisdiction in this case pursuant to the *Federal Railroad Safety Act*, 49 U.S.C. §20109(d)(3)(FRSA).

## PARTIES

54.    The plaintiff, Jerome C. Johnson, is a citizen and resident of the State of New Jersey, residing therein at 644 W. 7th Street, Plainfield, New Jersey.

55.    The defendant, New Jersey Transit Rail Operations, Inc. (NJTRO), is a corporation duly organized and existing under and by virtue of the laws of the state of New Jersey and does business in the Eastern District of Pennsylvania.

56.     At all times material hereto, the defendant operated trains in, had employees working in, and did business in the Eastern District of Pennsylvania.

## FACTS

57.     During all times mentioned herein, the defendant railroad carrier engaged in interstate commerce by providing railroad transportation between several of the states of the United States, including but not limited to, the Commonwealth of Pennsylvania, the State of New Jersey, and the State of New York.

58.     At the time of the defendant's FRSA violations, the plaintiff was employed by the defendant railroad as a conductor/brakeman, and qualified as an employee within the meaning of 49 U.S.C. §20109.

59.     All of the averments set forth in the foregoing paragraphs are incorporated in the following Causes of Action as though set forth therein at length.

## FRSA CAUSE OF ACTION

60.     Plaintiff has been employed by NJT since July 8, 1998.

61.     Plaintiff is a qualified conductor/brakeman who primarily works at NJTRO's Morrisville, Pennsylvania Yard.

62.     Mr. Joseph Burkett is NJTRO's Yardmaster at the Morrisville Yard.

63.     During Plaintiff's NJTRO employment, he was under the supervision of Mr. Burkett.

64.      Mr. Burkett regularly ordered Plaintiff and other employees to violate FRA regulations, NORAC Rules, NJT operating and safety rules, and similar rules, so that the employees would perform their work more quickly and/or produce more work before the employees could no longer work because of the Hours of Service Act.

65.     Mr. Burkett's illegal orders included, but are not limited to, (a) placing equipment in

10

locations where it fouled the tracks, (b) leaving equipment in locations where it fouled the tracks, (c) ordering the equipment be moved in a unsafe manner, (d) ordering the equipment be coupled in a unsafe manner, and (e) requiring employees of one craft to perform duties of another craft, even though the employees were not trained and/or familiar with the duties they were ordered to perform.

66.     Plaintiff engaged in numerous protected activities in an effort to report Mr. Burkett's illegal activities and to make certain that he and other NJTRO employees were not ordered to perform their duties unsafely and/or in violation of FRA, NORAC and NJTRO rules and regulations.

67.     Plaintiff requested that his Union file a formal grievance against Mr. Burkett, and such a grievance was filed on approximately March 24, 2015.

68.     Plaintiff also personally informed several of Mr. Burkett's supervisors, and various NJTRO officers, manager and supervisors, of Mr. Burkett's illegal orders and activities.

69.     Plaintiff personally informed Mr. Burkett, as well as several of Mr. Burkett's supervisors, and various NJTRO officers, manager and supervisors, that a formal grievance had been filed against Mr. Burkett, in the hope that while the grievance was pending this information would cause Mr. Burkett to stop making illegal demands of himself and other employees.

70.     However, rather than ceasing illegal orders, Mr. Burkett engaged in vicious intimidation of the Plaintiff in retaliation for Plaintiff's protected activities, including filing a grievance against Mr. Burkett, and in an effort to intimidate the Plaintiff from future protected activities.

71.     Mr. Burkett's retaliatory actions and intimidation included, but is not limited to, (a) threatening Plaintiff that continued complaints about him and his orders could be dangerous because they will upset NJT employees who carry guns, (b) threatening Plaintiff that because of Plaintiff's complaints about him, initiating a grievance against him, and reporting him to his supervisors,

11

Plaintiff should "keep looking over his shoulder" because the railroad is a dangerous place where things such as brake shoes might come flying toward him, and finally, (c) that Plaintiff should be concerned because if FRA violations result in discipline or dismissal of white employees, they could react violently against the Plaintiff.

72.     Mr. Burkett's threats or "suggestions" of violence, and especially the racial nature of the threats and intimidation, are beyond all levels of common decency; are outrageous; are intended to willfully cause extreme fear; and constitute outrageous, willful and grossly careless conduct in which there was a wanton disregard and reckless indifference to the rights and welfare of the Plaintiff.

73.     The defendant railroad had knowledge of all of the protected activities referenced above.

74.     The defendant railroad took adverse or unfavorable actions, and engaged in a pattern of retaliatory behavior, against the plaintiff in whole or in part due to his protected activities when it engaged in the aforementioned retaliation and discipline.

75.     In so doing the defendant railroad acted with reckless disregard for the law and with complete indifference to the plaintiff's rights under the FRSA.

76.     On October 6, 2015, the plaintiff filed a FRSA complaint with the Secretary of Labor's Region III OSHA Whistleblower Office.  This was filed within 180 days from the date the plaintiff became aware of the defendant railroad's intent to take adverse or unfavorable personnel action against him.

77.     The Region III OSHA Whistleblower Office commenced its investigation, and the plaintiff fully cooperated with OSHA's investigation.  However, OSHA did not issue a final decision within 210 days after the filing of the FRSA complaint.  The delay was not due to any bad faith on

12

the part of the plaintiff.

78.     On June 2, 2016, Plaintiff filed a *Notice of Intent to File Original Action In United States District Court* with the OSHA Region III Whistleblower Office.

79.     More than 15 days have elapsed since Plaintiff filed his Notice of Intent.

80.     Plaintiff has exhausted all administrative remedies as required by statute and/or common law.

81.     Pursuant to 49 U.S.C. §20109(d)(3) of the FRSA, the plaintiff has a statutory right to bring an original action in the United States District Court for a jury trial regarding the railroad's violation of the FRSA.

82.     Pursuant to the FRSA, 49 U.S.C.§20109(d)(3), the plaintiff is now bringing this original action in law and equity for de novo review by the United States District Court for the Eastern District of Pennsylvania, which court has jurisdiction over this FRSA action without regard to the amount in controversy.

**WHEREFORE,** in order to encourage employees to freely report all injuries without fear of any retaliation, and further to encourage all employees to freely report unsafe conditions and violations of federal statutes and regulations, thereby ensuring the Federal Railroad Administration has the necessary information to develop and administer an effective rail safety regulatory program that promotes safety in every area in our nation's railroad operations, the plaintiff demands a judgment under the FRSA for all relief necessary to make him whole, including but not limited to:

      a.   expungement of all references to the disciplinary actions set forth above;

      b.   compensatory damages for mental anguish and emotional distress due to the defendant's conduct;

      c.   compensatory damages for economic losses due to the defendants' conduct;

13

d.  the statutory maximum of punitive damages;

e.  special damages for all litigation costs including expert witness' fees and attorneys'

fee.

COFFEY KAYE MYERS & OLLEY

BY:  _____
ROBERT E. MYERS
LAWRENCE A. KATZ
Counsel for Plaintiff

Date:  _____

14